JAMES STEWART ET AL.<br>v.<br>JOHN H. POTTS.

CREDITOR'S BILL—WIFE'S PROPERTY.—The evidence shows that the wife of defendant acquired the property in question by means of her own, without the aid of her husband. It being her sole, separate property, she could manage and dispose of it as she pleased, and it could not be subjected to payment of the husband's debts.

APPEAL from the Circuit Court of Greene county; the Hon. A. G. BURR, Judge, presiding. Opinion filed October 19, 1881.

Messrs. PATTERSON & ENGLISH, for appellants.

Messrs. BROWN, KIRBY & RUSSELL, for appellee.

HIGBEE, P. J. This is a proceeding in chancery in the nature of a creditor's bill, to subject a fund in the hands of one Edward M. Husted, a special commissioner, to the payment of a judgment in favor of appellee, and against appellant, James Stewart. The bill alleges that a judgment for $899.77 and costs was rendered in favor of appellee and against said James Stewart, in the Circuit Court of Greene county, on the fifth day of March, 1874; that an execution was issued thereon and returned *nulla bona*, and that said judgment still remains

Stewart v. Potts.

in full force, and that the defendant in said judgment is wholly insolvent. That James Stewart purchased from Albert Roper and Frederick Hudson, on the —— day of ————, 1874, lots 85 and 86 in the first plat of the town of Roodhouse, and caused the title thereto to be conveyed to his wife, Parthenia Stewart; that the purchase money was paid by the judgment debtor, and the conveyance made to his wife to defraud his creditors. That James Stewart caused to be erected on said premises a dwelling and out-houses of the value of $3,000, paid for the same with his own money, and that his wife furnished no part of the money paid for the lots or the improvements made thereon; avers the death of Mrs. Stewart, intestate, on the 4th day of December, 1877, leaving children as her only heirs-at-law, who filed a bill in said Greene Circuit Court for partition; that appellee was not made a party thereto, and that a decree was rendered therein at the September term, 1878, under which said premises were sold by E. M. Husted, a special commissioner, on the 11th day of December, 1878, for $1,300, which is still in his hands. The bill makes James Stewart, Husted, and the heirs-at-law of Mrs. Stewart defendants, and prays for the payment of said judgment out of said fund. Answers were filed to said bill by defendants, denying the material allegations thereof; replications were filed thereto, and upon a final hearing a decree was rendered granting the relief prayed for. The evidence is all copied into the record, and it wholly fails to sustain the charge that the lots were purchased and improvements made with the money of James Stewart, and the deed caused by him to be made to his wife to defraud his creditors.

James Stewart testifies, that after his oldest son became of age, he was the owner of thirty acres of brush land, and some town lots in Manchester; that he boarded with his mother several years after he was of age, and in settlement of what he owed her in 1868 or 1869, he conveyed to her the thirty acres of land; that she afterwards sold the land to Mr. Piper, for two horses, and a note for $450; that she exchanged one of the horses for the lots in Roodhouse, and used the $450, in paying for the improvements thereon; that she moved into the house

after the $450 were paid, and kept a boarding house, and earned a considerable portion of what was afterwards paid, in that way; that no portion of the money paid, either for the lots or improvements was paid by witness; he was insolvent and unable to pay, and was a part of the time west, in Nebraska.

Witness further testifies, that he had no interest in the land conveyed by his son to his wife, nor was his son at the time indebted to him. It further appears that the improvements cost $1,500 or $1,600, and that Mrs. Stewart borrowed some money on a mortgage upon the premises, which was paid by Husted after the sale; the amount however is not stated. All contracts were made in the name of the wife, and all payments for the property, and the improvements thereon made by her. The testimony of the husband, that he had no interest in the lands conveyed by his son to his mother, and that his son was not at the time indebted to him, is not contradicted by any evidence in the record; it is therefore immaterial whether the conveyance was a gift from the son to his mother, or for a valuable consideration; neither the husband nor his creditor were in position to question its validity.

This property was the property of the wife, and its proceeds were invested by her in the lots and improvements sold by the commissioner in the partition suit.

The money received by the wife from boarders, was also used in paying for the improvements on her lots.

The statute provides that " a married woman may receive, use and possess her own earnings. " And when she engages in keeping a boarding house, and by her own labor earns money, which she receives from her boarders, and invests it in a homestead in her own name, it is her separate property, and is not liable for the debts of her husband. Partridge et al. v. Arnold, 73 Ill. 600.

The money in the hands of the commissioner was derived from the sale of property which belonged to the wife at the time of her death, and descended to her heirs, unincumbered by her husband's debts.

The court therefore erred in decreeing its payment to his creditors.

Decree reversed.